AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

FILED by _____ D.C.

JAN - 9 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

| United States of America | )  |  |
|---|---|---|
| v. | ) | |
| RICHARD SULLIVAN, | ) | Case No.   13-8014-DLB |
| | ) | |
| | ) | |
| | ) | |

_____
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ January 8, 2013 _____ in the county of _____ Palm Beach _____ in the _____ Southern _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. Section 1324(a)(1)(A) | Alien Smuggling |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Border Patrol Agent Scott H. Stacy
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   1 - 9 - 2013

_____
*Judge's signature*

City and state:        West Palm Beach, FL

U.S. Magistrate Judge Dave Lee Brannon
*Printed name and title*

## AFFIDAVIT

I, Scott Stacy, being duly sworn, depose and state:

1.      I am a Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection (CBP) (formerly Immigration and Naturalization Service), United States Border Patrol and have been so employed for more than fifteen (15) years.  I am currently assigned to the West Palm Beach Border Patrol Station, Riviera Beach, Florida.  The station is located in the Southern District of Florida.

2.      As a Border Patrol Agent, my duties include the detection and interdiction of individuals illegally entering the United States, and those aliens who are currently within the United States illegally.  I am trained in detecting and locating individuals suspected of assisting aliens in their illegal entry into the United States by any means.  I am also responsible for the investigation and processing of aliens who are entering or residing illegally in the United States as well as the investigation of people responsible for the smuggling of such undocumented aliens.

3.      The statements contained in this affidavit are based upon my own personal knowledge, as well as information provided to me by other law enforcement officials and employees of CBP.  I have not included in this affidavit each and every fact and circumstance known to me, but only the facts and circumstances that I believe are sufficient to establish probable cause to charge Richard G. SULLIVAN with a violation of Title 8, United States Code, Section 1324.

1

## FACTUAL BACKGROUND

4.      On January 8, 2013, approximately 1:40 p.m., a Palm Beach Sheriff's Office (PBSO) Marine Unit deputy observed a yellow, approximately 25' boat come through the Boynton Inlet from the Atlantic Ocean and proceed to the west end of the public dock behind the PBSO Marine Unit office located at the Boynton Inlet Park (6990 N. Ocean Boulevard), Boynton Beach, Palm Beach County in the Southern District of Florida.  The public dock at the Boynton Inlet Park is not a designated port for aliens to enter the United States.

5.      A woman and a small child got off onto the dock and the vessel then quickly pulled away and went back out the inlet.  The deputy positioned himself to see the vessel traveling southbound along the coastline.

6.      The deputy then went back to the dock to locate the woman and child and saw her running with the child through the playground toward Ocean Avenue.  The deputy believed he had just witnessed a migrant landing and called his dispatch to notify Border Patrol.

7.      The deputy launched his patrol boat in order to intercept the vessel.  The PBSO Aviation Unit and another PBSO Marine Unit were able to locate the vessel approximately 3.5 miles south of the Boynton Inlet.  The operator of the vessel was identified as Richard G. SULLIVAN.  SULLIVAN was aboard a 2001 25' Freeport Skiff with a Grand Bahama registration of GB01783.

8.      The deputies escorted SULLIVAN back to the Boynton Inlet area.  While waiting for agents to arrive, SULLIVAN told the deputy that he rented the boat in the Bahamas and crossed with his girlfriend and her son.  SULLIVAN added that his girlfriend had become seasick, so he dropped her off on the dock and was to meet her later at a hotel.

9.      An Ocean Ridge police officer encountered the woman and child at 6849 N. Ocean Boulevard, Ocean Ridge, Palm Beach County in the Southern District of Florida.  The woman was later identified as Sarai PONCE-GARCIA and her three-year-old son was fully identified, but will be referred to herein as "J.O."  Automated records checks determined that PONCE-GARCIA was a Mexican national who had recently applied for a student visa to enter the United States.  That application had been denied. Your affiant has compared the photograph taken during processing of the visa application to PONCE-GARCIA and determined that they are the same person.

10.     U.S. Border Patrol agents of the West Palm Beach Station responded to the Ocean Ridge police officer's location and questioned PONCE-GARCIA as to her citizenship.  PONCE-GARCIA, with a thick foreign accent, in broken English replied that she was a United States Citizen by birth in New Jersey.  PONCE-GARCIA was asked if she had any identification documents on her.  She indicated that they had left their passports at their hotel in the Bahamas.  The agent then questioned PONCE-GARCIA

as to how she and her son would be able to clear U.S. Customs at the port of entry without their passports.  PONCE-GARCIA could not produce an answer.

11.    PONCE-GARCIA and her child were detained and both were transported to the Border Patrol Station for further investigation and interviews.

12.    A Border Patrol agent responded to the inlet where the vessel was located and an agent conducted a field interview with SULLIVAN.  SULLIVAN indicated that he along with his girlfriend and her son (referring to PONCE-GARCIA and J.O.) had just arrived from the Bahamas in a rented vessel with the intent to spend the night at a resort in Boca Raton, Florida.  SULLIVAN also stated that he knew the procedure of checking in with U.S. Customs and that he was going to check in but his girlfriend had gotten seasick and he was forced to drop her off at the park next to the Boynton Inlet.

13.    The agent then asked SULLIVAN how long he had known his girlfriend. SULLIVAN stated that they had known each other for most of their lives while growing up in New Jersey.  When asked about how they got to the Bahamas, SULLIVAN replied that all three had flown from New Jersey to the Bahamas and that they were planning to spend one night in Boca Raton and then go back to Freeport.

14.    When asked about their luggage, SULLIVAN indicated that they had left their luggage in the Bahamas because they were planning to stay only one night.  The agent then advised SULLIVAN that he needed to check his story with Bahamian

4

Customs and that he was going to be detained for further investigation.  SULLIVAN was transported to the Border Patrol for further investigation.

<u>INTERVIEWS</u>

15.     At the Border Patrol station, PONCE-GARCIA was advised of her *Miranda* rights and initially invoked her right to remain silent.  She later provided a post-*Miranda* video-recorded statement.  PONCE-GARCIA stated that SULLIVAN was a family friend and that her father works for SULLIVAN.  PONCE-GARCIA said that SULLIVAN met her and her son in Mexico City, Mexico and the three of them flew to Cuba.  They were in Cuba approximately four nights and then the three of them flew to Nassau, Bahamas.  PONCE said that after landing in Nassau they flew to Freeport, Bahamas on the same day.  PONCE stated that they stayed a couple nights in the Bahamas and then came to the United States.

16.     At the Border Patrol station, SULLIVAN was advised of his *Miranda* rights and agreed to provide a statement without a lawyer present.  During a post-*Miranda* video-recorded statement, SULLIVAN admitted knowing that passengers on his rented vessel (PONCE-GARCIA and J.O.) were Mexican nationals without the proper immigration documents to enter the United States legally.  He also admitted that he knew that bringing the aliens illegally from the Bahamas to Florida was against the law.

5

17.     SULLIVAN indicated that he was not paid any money for bringing the two aliens illegally into the United States.  SULLIVAN stated that he was a close friend of the family and he wanted to help reunite the whole family in New Jersey.

WHEREFORE, based upon the foregoing, your Affiant submits that there is probable cause to believe that on or about January 8, 2013, Richard G. SULLIVAN, the defendant, knowing that Sarai Ponce-Garcia and J.O. were aliens, did bring them into the United States in any manner whatsoever at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such aliens; in violation of Title 8, United States Code, Section 1324(a)(1)(A).

FURTHER AFFIANT SAYETH NAUGHT.

_____
SCOTT STACY
BORDER PATROL AGENT
UNITED STATES BORDER PATROL

Sworn and subscribed to before me
this ___9___ day of January, 2013.

_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

6

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

No. ___13-8014-DLB___

UNITED STATES OF AMERICA

vs.

RICHARD SULLIVAN,

　　　　　Defendant.

_____/

## CRIMINAL COVER SHEET

1.　　Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?　　_____ Yes　_X_ No

2.　　Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?　　_____ Yes　_X_ No

　　　　　　　　Respectfully submitted,

　　　　　　　　WIFREDO A. FERRER
　　　　　　　　UNITED STATES ATTORNEY

　　　　BY: _____
　　　　　　　　A. MARIE VILLAFAÑA
　　　　　　　　ASSISTANT UNITED STATES ATTORNEY
　　　　　　　　Ann.Marie.C.Villafana@usdoj.gov
　　　　　　　　FL BAR NO. 0018255
　　　　　　　　500 S. Australian Avenue, Suite 400
　　　　　　　　West Palm Beach, FL 33401-6235
　　　　　　　　Tel: (561) 820-8711
　　　　　　　　Fax: (561) 820-8777